IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ERIC BRANDON COUSINS, #673703, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:24-cv-01115 |
| | ) | |
| JERRY SCOTT, et al., | ) | JUDGE CAMPBELL |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

State inmate Eric Cousins, while he was in pretrial detention in the Sumner County Jail, filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

This case is before the Court for ruling on Plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. PAUPER STATUS

Subject to certain statutory preconditions, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee.[1] Because it appears from Plaintiff's submissions[2] that he lacks the funds to pay the entire filing

---

[1] A prisoner bringing a civil action is required to pay the full filing fee, either in a lump sum at the time of filing or in installments over time via an assessment against the prisoner's inmate trust account. 28 U.S.C. § 1915(b)(1)–(2). If the prisoner is granted pauper status and allowed to pay in installments, the fee is $350 instead of $405. *See id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023).

[2] Plaintiff's IFP application consists of the financial affidavit required by 28 U.S.C. § 1915(a)(1). It does not include the certified statement of Plaintiff's inmate trust account history required by Section 1915(a)(2). However, Plaintiff notified the Court that he asked for a certified statement, it was refused, and he filed two grievances over that refusal to no avail. (Doc. No. 7 at 1.) In these circumstances, the Court in its discretion deems the statutory requirements met. *See Michael Kilpatrick v. James O'Rourke*,

fee, his IFP application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

**A. Legal Standard**

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim

---

No. 3:16-cv-01840, Doc. No. 3 at 1–2 (M.D. Tenn. 2016) (discussing remedy for inmate who documents prison officials' refusal to cooperate with his efforts to obtain services and documentation related to the filing fee).

2

upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Factual Allegations**

Plaintiff alleges that he contracted two staph infections during his time in the Sumner County Jail due to unsanitary shower conditions. (Doc. No. 1 at 5; Doc. No. 5 at 1.[3]) He alleges that he "should have been given antibiotics and cream" but was instead told that he had suffered spider bites. (Doc. No. 1 at 5.) He was left with scars on his arm and leg from the infections. (*Id.*) Plaintiff further alleges that his knee and leg were in constant pain from climbing up and down from his top bunk, but his requests for assignment to a bottom bunk were refused because, according to the medical supervisor identified as "Penny," he did not meet the criteria (which Penny could not name) for a "bottom bunk lower level restriction." (*Id.*) Only after he told "medical" he was considering legal action was he given a bottom bunk restriction. (*Id.* at 7.)

Plaintiff alleges that Jail Administrator Jerry Scott and Sgt. Barber had him "write statements on illegal activities in 2C and 3A" but then subsequently failed to protect him from being assaulted and extorted for months by his fellow inmates. (*Id.* at 5.) He alleges that other inmates made him pay hundreds of dollars every month in order to avoid "consequences" at their hands, (Doc. No. 5 at 2), and that Defendant Scott and jail staff "failed to take legal action on inmates who were extorting [him]." (Doc. No. 5 at 2.) Plaintiff states that his "back and neck have been bothering [him] from being beat on by other inmates." (Doc. No. 1 at 5.) He also alleges that unnamed jail staff blocked him from sending a text message to his wife to tell her he'd been beaten, and that they "tried" to put him back in Tower 3 after he'd had his life threatened there. (*Id.* at 5, 8.) Finally, Plaintiff alleges that he was "blocked from writing requests or grievances," and that his jailers read his legal mail and did not allow it to leave the jail if he was "telling on them." (*Id.* at 5, 8; *see also* Doc. No. 5 at 2.)

---

[3] Plaintiff filed a supplement (Doc. No. 5) to his Complaint, which the Court considers in this PLRA screening.

Based on the facts recounted above, Plaintiff claims that his Eighth and Fourteenth Amendment rights were violated. (*Id.* at 3.) As relief, he requests an award of compensatory damages against Jail Administrator Scott, Sgt. Barber, Medical Supervisor Penny, and Fast Access ("aka T.K. Medical Provider"). (*Id.* at 2–3, 5.)

**C. Analysis**

The Court first analyzes Plaintiff's claims related to medical care. As a pretrial detainee at the time of his incarceration in the Sumner County Jail, Plaintiff had a Fourteenth Amendment right to be free from deliberate indifference to serious medical needs. *See Hyman v. Lewis*, 27 F. 4th 1233, 1237 (6th Cir. 2022). To state a claim for a violation of this right, Plaintiff must allege that: (1) he had a sufficiently serious medical need; and (2) a defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Ky.*, 60 F. 4th 305, 317 (6th Cir. 2023) (internal citations and quotation marks omitted).

An active staph infection would present a medical need that is sufficiently serious. But a jail medical provider misdiagnosing such an infection as a spider bite does not suffice as the deliberate, reckless response to a known or obvious medical need required to establish a plausible Fourteenth Amendment claim. Rather, such a claim sounds in negligence and is properly pursued under the state law of medical malpractice. *See Dale v. Corr. Corp. of Am.*, No. 3:05-0319, 2006 WL 3041371, at *2 (M.D. Tenn. Oct. 24, 2006) (dismissing inmate's claim based on jail physician's alleged negligence in "misdiagnosing the plaintiff's symptoms as a spider bite and failing to prescribe the proper medication to combat the [staph] infection"); *see generally Walker v. Floyd Cnty., Ind.*, No. 407CV-0014-SEB-WGH, 2007 WL 2237622, at *4 (S.D. Ind. July 31, 2007) (describing medical expert's testimony that staph "usually first appears on the skin as

swollen, red, necrosis–resembling a spider bite or a boil"); https://www.mayoclinic.org/diseases-conditions/mrsa/symptoms-causes/syc-20375336 (last visited Aug. 5, 2025) ("Staph skin infections, including MRSA, generally start as swollen, painful red bumps that might look like pimples or spider bites."). Accordingly, presuming the truth of Plaintiff's sparse allegations that he had staph infections misdiagnosed as spider bites by an unnamed medical provider, such misdiagnosis does not rise to the level of a constitutional violation. *See Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 596 (6th Cir. 2021) (finding that "[m]ere negligence is insufficient" to show deliberate indifference in detainee medical-needs case).

Nor is a constitutional violation plausibly claimed by reference to Defendant Penny's allegedly improper withholding of a bottom-bunk restriction based on Plaintiff's failure to meet the applicable criteria. It is not clear how long Plaintiff had to wait for the bottom-bunk restriction which, as the Complaint confirms, he ultimately received from Penny or another jail medical provider. (*See* Doc. No. 1 at 7 ("After I told medical I was contacting (sic) legal action I was giv[e]n bottom bunk restriction[.]").) Regardless, Defendant Penny, in her initial resistance to ordering such a restriction based on Plaintiff's complaints of knee and leg pain, is not adequately alleged to have acted deliberately and recklessly in response to an elevated risk of harm that was known or obvious. In sum, Plaintiff fails to state a viable claim of deliberate indifference to serious medical needs against Defendants Penny and Fast Access (also known as T.K. Medical Provider).

Plaintiff's remaining claims fare no better than his medical care claims. He alleges that Defendants Scott and Barber took his statements against his fellow inmates but then failed to protect him from "being beat on" by other inmates, resulting in his back and neck "bothering" him. (Doc. No. 1 at 5.) He alleges that Defendants failed to prevent an extortion scheme against him, and that unnamed jail staff "tried to" relocate him to an unsafe location in Tower 3 (*id.*) and

6

otherwise "[f]ailed to provide safe living conditions resulting in [him] having to have a broken tooth pulled." (Doc. No. 5 at 1.) Plaintiff attributes these failures to "staff negligence" or a lack of proper training as to "how to properly d[o] the[ir] jobs and handle situations." (*Id.* at 1–2.)

At best, these allegations support the claim of negligence that Plaintiff explicitly asserts. But "more than negligence" is required to state a claim under Section 1983. *Westmoreland v. Butler Cnty., Kentucky*, 29 F.4th 721, 727, 728–30 (6th Cir. 2022); *see Kingsley v. Hendrickson*, 576 U.S. 389, 395–96 (2015) (observing that, while detainees are not required to prove defendant's subjective state of mind, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)); *Daniels v. Williams*, 474 U.S. 327 (1986). The Complaint in this case is devoid of factual allegations from which the Court could reasonably infer that Defendants Scott or Barber were deliberately indifferent to a substantial risk of Plaintiff suffering serious harm at the hands of other inmates, as required to support a plausible Fourteenth Amendment failure-to-protect claim. *See Westmoreland*, 29 F.4th at 729. Although Plaintiff alleges that he was beaten and extorted by other inmates after Scott and Barber had him "write statements on illegal activities in 2C and 3A" (Doc. No. 1 at 5), he does not allege that these defendants identified him as the source of such statements to the inmates in 2C and 3A, or to any other jail inmates. *Cf. Westmoreland*, 29 F.4th at 729 (recognizing "that being identified as a 'snitch' in prison puts an inmate at substantial risk of assault," and finding that this element was established by showing that the defendant "identified [plaintiff] as a 'rat' in front of his cellmates . . . and informed other inmates that [plaintiff] had 'told on [them]'"). Nor do the isolated allegations of a broken tooth or Plaintiff's back and neck bothering him in the wake of alleged inmate assaults support the claim that Defendants' failures

"put [Plaintiff] at substantial risk of suffering serious harm." *Id.* Plaintiff's negligence-based claims are not plausibly stated under Section 1983 as violations of his constitutional rights.

Plaintiff's claims against jail administration—that it limited Plaintiff's ability to maintain more than 3 pending grievances at one time (Doc. No. 5 at 2) and blocked his attempts to send text messages to his wife on account of their content (Doc. No. 1 at 8)—are not sufficient to state a claim that his constitutional rights were violated. "[T]here is no constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (citing cases). Moreover, "a restriction on one type of mail that a prisoner may receive (i.e., electronic mail) does not prevent a prisoner from receiving other mail (i.e., physical mail), and therefore, the prisoner retains his First Amendment right to send and receive mail[.]" *Mims v. Macauley*, No. 1:24-CV-1289, 2025 WL 466602, at *9 (W.D. Mich. Feb. 12, 2025).

Finally, as to Plaintiff's physical mail, the claim that his jailers read his "legal mail"[4] and did not allow it to leave the jail if the mail was "telling on them" (Doc. No. 1 at 8) is belied by his multiple mailings received in this Court (Doc. Nos. 1–2, 5–10), all of which in some way "tell on" Defendants and other jail staff. Such censorship-based claims are also unsupported by the level of factual detail necessary to plausibly claim relief for any constitutional violation. *See Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010) (holding that "no constitutional provision flatly prohibits as unlawful censorship a prison from opening and reading a prisoner's mail unless it can be shown that the conduct interferes with the prisoner's right to counsel or access to the courts or violates his rights of equal protection or procedural due process"). They are therefore due to be dismissed.

---

[4] Plaintiff does not elaborate in the Complaint or supplement on the nature of the legal mail allegedly read by jail staff. There is no reason to infer that such mail included correspondence to or from an attorney.

## III. CONCLUSION

For the reasons given above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. In light of this outcome, Plaintiff's pending motions (Doc. Nos. 6, 8, and 10) are **DENIED** as moot.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE